UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


WAYNE HUTTER,

      Petitioner,                                     Case No. 11-15246

v.

PAUL KLEE,                                         HON. AVERN COHN

      Respondent.

_____/

**MEMORANDUM AND ORDER**
**DENYING PETITION FOR WRIT OF HABEAS CORPUS**
**AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

I.  Introduction

This is a habeas case under 28 U.S.C. § 2254.  Petitioner Wayne Hutter

(Petitioner) is currently on parole supervision with the Michigan Department of

Corrections.  Petitioner, through counsel, filed a petition for a writ of habeas corpus

challenging his convictions for first-degree home invasion, M.C.L. § 750.110a(2)(b);

carrying a concealed weapon, M.C.L. § 750.227; felonious assault, M.C.L. § 750.82;

possession of a firearm in the commission of a felony, M.C.L. § 750.227b; and malicious

use of a telecommunications service, M.C.L. § 750.540e.  Respondent, through the

Attorney General's Office, filed a response, arguing that the claims are meritless and/or

procedurally defaulted.  For the reasons which follow, the petition will be denied.

II.  Procedural History

Petitioner was convicted of the above offenses following a jury trial.  Petitioner

filed an appeal of right to the Michigan Court of Appeals.  His convictions were affirmed.

People v. Hutter, No. 291140, 2010 WL 1629615 (Mich. Ct. App. Apr. 15, 2010); reconsideration den. No. 291140 (Mich. Ct. App. June 17, 2010).  Petitioner then filed an application for leave to appeal to the Michigan Supreme Court, in which he raised the same claims that he raised in his appeal of right before the Michigan Court of Appeals.  The Michigan Supreme Court denied leave to appeal.  People v. Hutter, 488 Mich. 981 (2010).

Petitioner filed a pro se petition for a writ of habeas corpus.  Following a status conference, the Court appointed counsel for Petitioner.  See Doc. 22.  The Court also granted Petitioner's motion to amend his petition to add a claim of ineffective assistance of appellate counsel and to hold the petition in abeyance to permit Petitioner to return to the state courts to exhaust this claim.  (Doc. 28).

Petitioner returned to state court and filed a post-conviction motion for relief from judgment.  The trial court denied the motion.  People v. Hutter, No. 2008010656-FH (Grand Traverse Cir. Ct., May 22, 2014).  The Michigan appellate courts denied petitioner leave to appeal. People v. Hutter, No. 322528 (Mich.Ct.App. Nov. 7, 2014); lv. den. 498 Mich. 865 (2015).

Petitioner then returned to federal court where the case was reopened and briefing schedules were set.  (Doc. 31).  Petitioner filed a supplemental brief.  (Doc. 32).  Respondent filed a response.  (Doc. 33).  Petitioner filed a reply.  (Doc. 35).

In his amended brief, petitioner seeks a writ of habeas corpus on the following grounds:

I. Where, as here, trial counsel failed to investigate, interview, or call

potential defense witnesses whose testimony would have been exculpatory of the most serious charge against him, petitioner was denied his right to effective assistance of counsel, in violation of U.S. Const., Am VI & XIV.

II. Where, as here, appellate counsel failed to properly present petitioner's ineffective assistance of trial counsel claim on direct appeal and petitioner was prejudiced by that failure, petitioner was denied his right to effective assistance of appellate counsel, in violation of U.S. Const., Am XIV.

III. Where, as here, petitioner's ineffective assistance of counsel and ineffective assistance of appellate counsel claims are grounded in a claim of actual innocence, this Court is not precluded by Pinholster from granting an evidentiary hearing to generate the factual record necessary to establishing those claims.

### III.  Facts

The material facts leading to Petitioner's conviction are recited verbatim from the

Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct

on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See Wagner v. Smith, 581 F.3d

410, 413 (6th Cir. 2009):

Defendant's convictions arise from him entering the home of Christine Blackledge and pointing a firearm at her to force her to talk to him about her relationship with Dan Lahner.  Blackledge and defendant had known each for 18 years, and they had periodically dated.  According to Blackledge, during the summer of 2005 [sic: 2008], they were just "very, very good friends"; they were not engaged in a sexual relationship.  On Labor Day weekend, Blackledge and defendant sailed from Traverse City to Boyne City to visit Lahner.  Early in the morning on September 1, 2008, defendant discovered Blackledge in the same bed as Lahner. [1]

On the afternoon of September 7, 2008, Blackledge returned to her Traverse City home after running errands.  She called Lahner, and while speaking with him, she saw defendant standing in her kitchen doorway.  Blackledge testified that she had not given defendant permission to enter her home, and she denied that she and defendant had a general practice of walking into each other's homes without knocking.

---

[1]  Blackledge testified that she and Lahner were only talking. (Footnote original).

Defendant told Blackledge to get off the telephone.  When she complied, defendant pulled out a gun and pointed it at her right between her eyes. Defendant told her that the gun was loaded and that they were going to talk. He backed Blackledge into her sunroom, where she sat on a couch and defendant straddled a chair.   Defendant continued to point the gun at Blackledge's head; his finger remained on the trigger.  Defendant screamed and yelled at Blackledge about Lahner.  Blackledge thought she was going to die.  Eventually, the telephone rang, and defendant calmed down and soon left.  Blackledge immediately locked the front door and called Lahner and some friends who were coming over for supper.  She then called 911. Officer Kurt Bazner responded to Blackledge's home, while Sergeant James Bussell drove out to defendant's house.  Bazner described Blackledge as "upset, visibly shaken," but she was able to methodically tell him what had happened. Bazner then spoke with Bussell, telling Bussell that it was "a good felonious assault."   Bussell, accompanied by Deputy Ryan Salisbury, approached defendant's home to speak with defendant.  He wanted to hear defendant's side of the story.  Defendant, after being asked what happened in town, stated that he only pointed "it" at Blackledge for a second; he was only trying to scare her.

People v. Hutter, 2010 WL 1629615, at * 1.

IV.  Standard of Review

28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death

Penalty Act (AEADPA),  imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless
> the adjudication of the claim–
>
> > (1)     resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the Supreme
> > Court of the United States; or
> > (2)     resulted in a decision that was based on an
> > unreasonable determination of the facts in light of the
> > evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

4

question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11.  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011)(citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.  A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. See Woods v. Etherton, 136 S. Ct. 1149, 1152 (2016).

V.  Petitioner's Claims

A.  In General

Petitioner raises two claims of ineffective assistance of counsel.  He first claims that his trial counsel was ineffective for failing to interview or call several witnesses to testify that Petitioner had been given permission by the victim to enter her home in the past and that the two had an open door policy with respect to one another, which would

have provided a defense to the first-degree home invasion charge.

In his second claim, Petitioner says that appellate counsel was ineffective for failing to properly present the ineffective assistance of trial counsel claim on petitioner's appeal of right because he failed to move for an evidentiary hearing on the claim pursuant to People v. Ginther, 390 Mich. 436, 443 (1973) and M.C.R. 7.211(C)(1).

Petitioner also separately requests an evidentiary hearing on these claims.

B. Legal Standard

To show that he or she was denied the effective assistance of counsel under federal constitutional standards, Petitioner must satisfy a two prong test. First, Petitioner must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that his counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 687 (1984). In so doing, Petitioner must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. Id. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. Strickland, 466 U.S. at 689. Second, Petitioner must show that such performance prejudiced his defense. Id. To demonstrate prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Supreme Court's holding in Strickland places the burden on Petitioner who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. See Wong

6

v. Belmontes, 558 U.S. 15, 27 (2009).  The Strickland standard applies as well to

claims of ineffective assistance of appellate counsel. See Whiting v. Burt, 395 F. 3d

602, 617 (6th Cir. 2005).

More importantly, on habeas review, "the question 'is not whether a federal court

believes the state court's determination' under the Strickland standard 'was incorrect

but whether that determination was unreasonable-a substantially higher threshold.'"

Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)(quoting Schriro v. Landrigan, 550

U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of

the Strickland standard was unreasonable.  This is different from asking whether

defense counsel's performance fell below Strickland's standard." Harrington v. Richter,

562 U.S. at 101.  Indeed, "because the Strickland standard is a general standard, a

state court has even more latitude to reasonably determine that a defendant has not

satisfied that standard." Knowles, 556 U.S. at 123 (citing Yarborough v. Alvarado, 541

U.S. at 664).  Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial

review" applies to a Strickland claim brought by a habeas petitioner. Id.  This means

that on habeas review of a state court conviction, "[A] state court must be granted a

deference and latitude that are not in operation when the case involves review under

the Strickland standard itself."Harrington, 562 U.S. at 101.

### C.  Ineffective Assistance of Trial Counsel

#### 1.  State Court Decisions

Petitioner initially raised his ineffective assistance of trial counsel claim on his

appeal of right.  Appellate counsel did not file a motion for a Ginther hearing with the

trial or appellate courts.  Within the body of the appellate brief, however, appellate

counsel did cite to <u>Ginther</u> and several times requested a remand for an evidentiary

hearing on the ineffective assistance of trial counsel claim. [2]   Petitioner's appellate

counsel also attached to his appellate brief affidavits from petitioner's sister, Alice

Dalgetty, James David Rowland, Robert Fish, and Donald Fish. [3]   The affiants all state

that the victim had an open door policy with respect to petitioner and that they had

seen him entering the victim's house on prior occasions.  They also state that they

would have been willing to come to court to testify on Petitioner's behalf that the victim

had given Petitioner permission to enter her house in the past.  None of the affiants,

however, indicated that they had contacted Petitioner's trial counsel or otherwise

informed him of their existence.  There is no affidavit from Petitioner indicating that he

had informed trial counsel that he had witnesses who would support his claim that he

had standing permission to enter the victim's home.

> The Michigan Court of Appeals rejected this claim on direct appeal, explaining:
>
> Defendant argues that he was denied effective assistance of counsel when trial counsel failed to investigate, interview, and call witnesses that could substantiate defendant's testimony that he and Blackledge entered each other's homes without knocking and when counsel failed to object to opinion testimony from two officers that defendant was guilty.  Because defendant did not move for a <u>Ginther</u> hearing or a new trial below, our review is limited to mistakes apparent on the record.  And although defendant attached four affidavits in support of his ineffective assistance claim to his appellate brief, the affidavits are not a part of the lower court record and, therefore, cannot be considered.

---

[2]  See Appellant's Brief on Appeal, pp. 5, 7, 15, 27 (Doc. 7-9).

[3]  Copies of these affidavits were not included with the Rule 5 materials Respondent provided.  However, these affidavits are attached to Petitioner's application for leave to appeal to the Michigan Supreme Court. (Doc. 7-10).  Neither party disputes that these affidavits were attached to the brief on appeal filed with the Michigan Court of Appeals by appellate counsel on direct appeal.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

It is not apparent from the record that trial counsel failed to investigate and interview potential witnesses that could support defendant's testimony that he and Blackledge entered each other's houses without knocking. The record contains no description of what trial counsel did, or did not do, before trial. In addition, even if we were to consider the affidavits submitted with defendant's brief, we note that the four affidavits do not provide any factual support for defendant's claim that trial counsel failed to conduct a reasonable investigation. None of the affiants averred that trial counsel did not interview them before trial. Accordingly, defendant has failed to establish the factual predicate of his claim that trial counsel failed to conduct a reasonable investigation.

Defendant also claims that trial counsel failed to call witnesses at trial to support his testimony that he and Blackledge entered each other's homes without knocking. Decisions regarding whether to call witnesses involve matters of trial strategy. We will not second-guess counsel on matters of trial strategy, nor will we assess counsel's performance with the benefit of hindsight. Although "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation," as we have already stated, it is not apparent from the record that trial counsel failed to conduct less than a complete investigation. Accordingly, defendant has failed to overcome the presumption that counsel's decision not to call additional witnesses was sound trial strategy.

People v. Hutter, 2010 WL 1629615, at \* 2 (internal citations and footnote omitted).

Petitioner again raised this ineffective assistance of trial counsel claim in his post-conviction motion for relief from judgment. Petitioner attached to his motion three "updated" affidavits from Alice Dalgetty, Robert Fish, and James David Rowland. These "new" affidavits mainly added that they were never contacted by trial counsel, that they were not called to testify at Petitioner's trial, and that if they had been called, they would have testified to the statements in their original affidavits. These new affidavits again do not indicate that any of these individuals had ever contacted trial

9

counsel or that he was aware of their existence. [4]  Petitioner again did not supply an

affidavit indicating that he had ever informed trial counsel about these witnesses.

The trial judge denied relief, explaining:

The incident which produced this conviction involves Ms. Blackledge returning to her home on Ninth Street in Traverse City, unloading her vehicle through the front door of her home, and answering the phone.  At that point she testified Mr. Hutter appeared, produced a pistol which he pointed at her head, backed her into the rear of the house, and then forced her to sit as he sat facing her with the pistol pointing at her head while they discussed their relationship issues.  The affidavits of Robert Fish, Alice Dalgetty and James David Rowland were filed with the motion, apparently offered to provide evidence that Mr. Hutter in fact had permission to enter the home, and therefore a conviction of home invasion first degree should never have occurred.

First, no evidence is presented in these affidavits that Mr. Elhart [trial counsel] was actually aware of these witnesses.  How the defense counsel would have been aware of these witnesses is not set forth in the affidavits and no other evidence is presented in connection with the motion to show that Mr. Elhart was aware of these potential witnesses.

Second, the affidavit of Ms. Dalgetty indicates that she had visited Wayne Hutter's home in late July of 2008 for several days.  James Rowland and Robert Fish indicate they worked on Ms. Blackledge's house during the July and August period of 2008.  The incident in Boyne City which provoked an argument between the parties, and resulted in numerous phone calls by the Defendant to the victim which the victim found threatening, occurred well after this time period.  Had the witnesses actually testified, their testimony was not inconsistent with the victim's version of events insofar as relevant to the incident in which the Defendant entered her home and threatened her with a pistol in September 2008.

Ms. Blackledge did testify that the parties did NOT have the right to enter one another's homes unannounced.  These affidavits might contradict some aspects of that testimony.  But the entry by Mr. Hutter into the victim's home after the Boyne City incident and the numerous harassing phone calls from the Defendant could not have been viewed by the Defendant as an entry with permission.  After what happened in Boyne City and the threatening phone calls made by the Defendant, he could not possibly have thought it

---

[4]  See Doc. 34-1.

was okay to enter the victim's home carrying a pistol for the purpose of pointing it at her to secure her undivided attention while they discussed his grievances.  This evidence, even had it been presented, would not have made a difference in the outcome of the trial.

People v. Hutter, No. 2008010656-FH, * 2-3 (Grand Traverse Cir. Ct., May 22, 2014). [5]

## 2.  Discussion

Petitioner is not entitled to habeas relief on his ineffective assistance of trial counsel claim for several reasons.  First, Petitioner presented no evidence to the state courts on either his appeal of right or his post-conviction motion that his trial counsel had been made aware of these witnesses and their potential testimony.  A trial attorney is not ineffective for failing to call witnesses whom he or she is unaware of. See Ballinger v. Prelesnik, 709 F.3d 558, 563 (6th Cir. 2013); See also Bigelow v. Williams, 367 F.3d 562, 571 (6th Cir. 2004)  "Counsel cannot be expected to interview unknown witnesses." Ballinger, 709 F. 3d at 563.  In the absence of any allegation or evidence that trial counsel had been informed about these witnesses and their proposed testimony, the state court's rejection of Petitioner's ineffective assistance of counsel

---

[5]  The Court is aware that the trial court also denied Petitioner's claim because he failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3), for failing to raise his ineffective assistance of trial counsel claim on his appeal of right.  Petitioner, however, did raise an ineffective assistance of trial counsel claim on his appeal of right, although he did update the affidavits of three of his proposed witnesses.  It is not necessary to resolve the procedural default issue, because Petitioner's claim fails on its merits.  Moreover, although the trial court mentioned M.C.R. 6.508(D)(3), he also denied the claim on the merits.  Under these circumstances, the Court applies the deferential standard of review to the state court's decisions. See Moritz v. Lafler, 525 F. App'x. 277, 284 (6th Cir. 2013).

claim was not unreasonable. Id. [6]

Petitioner is also unable to establish that he was prejudiced by trial counsel's failure to call these witnesses. Petitioner alleges that these witnesses would have testified that Petitioner had long-standing permission to enter into the victim's house, that he permission to be in the victim's home on the day in question and, therefore, was thus not guilty of first-degree home invasion.

M.C.L. § 750.110a(2) states that:

A person who breaks and enters a dwelling with intent to commit a felony or a larceny in the dwelling or a person who enters a dwelling without permission with intent to commit a felony or a larceny in the dwelling is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:

(a) The person is armed with a dangerous weapon.
(b) Another person is lawfully present in the dwelling.

Michigan's first-degree home invasion statute includes all of the elements of the burglary of a dwelling, but also requires that the defendant be armed with a dangerous weapon and/or that the dwelling be occupied. See Johnson v. Warren, 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004)(citing United States v. Garcia-Serrano, 107 F. App'x. 495, 496-97 (6th Cir. 2004)). The term "without permission" is defined by Michigan law as "without having obtained permission to enter from the owner or lessee of the dwelling or from any other person lawfully in possession or control of the dwelling." M.C.L. § 750.110a(1)(c).

---

[6] Petitioner's sister, Alice Dalgetty, sent a letter to the trial court at the time of sentencing, in which she indicated that Petitioner did not tell her about his arrest or trial until it was all over. (Doc. 34-4).

12

Here, even if the victim had previously given Petitioner permission to enter her home, no rational juror could believe that Petitioner had permission to enter the victim's home under the circumstances that lead to his conviction. After Petitioner had confronted the victim in bed with Lahner, Petitioner became enraged and began yelling and throwing the victim's belongings off of a balcony. The victim was so frightened by Petitioner that she hid in one of the bedrooms. Petitioner left the Boyne City residence the next day while leaving the victim behind. Over the next week, Petitioner called the victim several times, but the victim refused to answer. In two of these calls, Petitioner left the following messages on the victim's answering machine:

Monday, September 1, 2008 - 5:19 p.m.

I really don't know what to call you yet - Um, like "Christine the whore"? Um, but anyhow, we've got clean-up issues ... Ah, number one, you owe John Robel - R-O-B-E-L - $450. And I would appreciate if you would write the check out to him, send it to me and then I will send it on to him. And, if you don't do that soon, within a week or so, then, there may be some consequences. Ah, the other thing, your new "friend" that you had "conversation" with last night, naked, "Dan-O," my ex-friend. Um, why don't you try to work on him for $14,000. Then you can pay me. I think that would be appropriate. Ah, thirdly, the stuff that I have in your house, I don't exactly know what, but I'd like it returned. Put it in my garage if I'm not here. And fourth and last, um, <u>I would prefer, I would prefer, not to see you or talk to you, ever again</u>. Have a great day. (Emphasis added).

Wednesday, September 3, 2008 - 3:49 pm

Hey Christine this is Wayne. Ah - is this Christine? –Um, "We were just 'talking' naked in bed," that Christine? I know you don't want to pick up when you see my calls and this is gonna be the last one, for a while, I think. But, you do owe me a bunch of money so, I'll be willing to kinda communicate from time to time. You know, I was thinking, that it must have been pretty interesting when Dan was fucking you, and you heard my footsteps come down the stairs, and then you had to come up with a plan, like in 20 seconds, and so that's why Dan jumped up and said, "Oh, we're just 'talking.'" And you looked at me, after everything I've done for you, you bitch, and you said "We're just 'talking.'" You know Christine, I hope you

fucking rot in hell!

After the confrontation in Boyne City and the subsequent threatening phone calls made by petitioner, including his statement that he never wished to see the victim again, a rational trier of fact could not conclude that Petitioner had permission to enter the victim's home while armed with a pistol and while intending to point it at her while discussing his grievances.  The mere fact that Petitioner may have had permission in the past to enter the victim's home does not establish that he had Permission to be inside of her home that night, particularly in light of the fact that there was no evidence that the victim had invited Petitioner into her home that night.

In sum, evidence that Petitioner had permission to enter the victim's home in the past would not have established that he had permission to enter the house on the night of the assault, because it would not have negated the fact that Petitioner went over to the victim's house armed with a gun, which he pointed at her.  This evidence, even had it been presented, would not have made a difference in the outcome of the trial. Petitioner is not entitled to relief on his first claim.

### D.  Ineffective Assistance of Appellate Counsel

In his second claim, Petitioner contends that appellate counsel was ineffective for failing to properly request a Ginther hearing on his ineffective assistance of trial counsel claim.

### 1.  Legal Standard

As an initial matter, the AEDPA's deferential standard applies to this claim. Petitioner raised this claim for the first time in his post-conviction motion for relief from judgment.  Although the trial court at the beginning of his opinion indicated that

14

Petitioner was claiming that appellate counsel was ineffective for failing to properly present his ineffective assistance of trial counsel claim on the appeal of right, the trial court did not expressly address this claim.  "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits" for purposes of invoking the AEDPA standard of review.  Johnson v. Williams, 133 S. Ct. 1088, 1096 (2013).  Because the trial court rejected the ineffective assistance of appellate counsel claim when denying the post-conviction motion, the AEDPA's deferential standard of review applies to petitioner's second claim.

### 2.  Discussion

Petitioner is not entitled to relief for several reasons.  First, although appellate counsel did not file a separate motion for a Ginther hearing, he did request an evidentiary hearing on petitioner's ineffective assistance of trial counsel claim in the body of his appellate brief.  Although it may be a "best practice" for an appellate attorney to file a separate motion under MC.R. 7.211(C)(1) when he or she determines that development of a factual record is required for appellate consideration of the issue, it is not necessarily deficient performance to not do so.  See, e.g., People v. Henry, Nos. 306449, 308963, 2013 WL 6331731, n. 1 (Mich. Ct. App. Dec. 13, 2013)("There is nothing in the court rules to suggest that defendant may not request a remand in an appellate brief under MCR 7.212(C)(8). Moreover, irrespective of whether defendant requested a remand, MCR 7.216(A)(5) and (7) provides this Court with the authority to remand for an evidentiary hearing without a motion from defendant."); People v. Moore, No. 303750, 2013 WL 1500886, n.2 (Mich. Ct. App. April 11, 2013)("[W]e recognize

that there is nothing in the court rules to suggest that a defendant may or may not simply request a remand in an appellate brief under MCR 7.212(C)(8).").

Second, appellate counsel's decision to raise the ineffective assistance of trial counsel claim without conducting an evidentiary hearing may have been a "reasonable recognition that the allegations of ineffective assistance could be determined from the trial transcript alone. No additional evidence was really necessary for the [appellate] court to make a fair determination of the sixth amendment issue." Young v. Miller, 883 F. 2d 1276, 1280 (6th Cir. 1989).

Third, in light of the fact that Petitioner's ineffective assistance of trial counsel claim is without merit, Petitioner cannot establish that he was prejudiced by appellate counsel's failure to conduct a Ginther hearing. See e.g. Davis v. Booker, 594 F. Supp. 2d 802, 831 (E.D. Mich. 2009); rev'd on other grds, 589 F. 3d 302 (6th Cir. 2009).

### E. Evidentiary Hearing

Petitioner requests an evidentiary hearing on his ineffective assistance of counsel claims. When deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable the petitioner to prove the petition's factual allegations, which, if true, would entitle the petitioner to federal habeas relief on his claim or claims. Schriro v. Landrigan, 550 U.S. at 474. "[B]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." Id. If the record refutes the petitioner's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing. Id. Stated differently, a petitioner is not entitled to an

16

evidentiary hearing on his claims if they lack merit.  See <u>Stanford v. Parker</u>, 266 F. 3d

442, 459-60 (6th Cir. 2001).

Here, because as explained above, Petitioner's claims lack merit, he is not

entitled to an evidentiary hearing.

VI.  Conclusion

For the reasons stated above, the state courts' rejection of Petitioner's claims

did not result in decisions that were contrary to Supreme Court precedent, an

unreasonable application of Supreme Court precedent, or an unreasonable

determination of the facts.  Accordingly, the petition for a writ of habeas corpus is

**DENIED.**

Furthermore, reasonable jurists would not debate the Court's assessment of

Petitioner's claims, nor conclude that the issues deserve encouragement to proceed

further.  The Court therefore **DECLINES** to grant a certificate of appealability under 28

U.S.C. § 2253(c)(2). [7] See <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

**SO ORDERED.**

<table>
<tr><td></td><td>S/Avern Cohn</td></tr>
<tr><td></td><td> AVERN COHN</td></tr>
<tr><td>Dated: July 12, 2016</td><td>UNITED STATES DISTRICT JUDGE</td></tr>
<tr><td>     Detroit, Michigan</td><td></td></tr>
</table>

---

[7]  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

17